[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION CONCERNING MOTION FOR EXTENSION OF COMMITMENT
The petitioner, the Department of Children and Families (DCF) filed a timely motion for extension of the child's commitment to the care and custody of that agency.[1] The respondent mother, Jessica R., objected to the motion. A contested extension hearing was held before this court on July 6, 1999 and July 12, 1999.
Jessica R. was present with her attorney throughout the hearing. Alexander N., the child's biological father[2], was present with his counsel, as were counsel for DCF and the attorney for the minor child. CT Page 9211
 FACTUAL FINDINGS
Having carefully considered all of the evidence and testimony presented at the hearing, the court makes the following factual findings based upon a preponderance of the evidence:
The child has been in DCF's custody since May 5, 1998 when the court issued an ex parte order granting Isaiah's temporary custody to the agency. Isaiah is 19 months old, his date of birth being December 14, 1997. When the child was committed to DCF on July 7, 1998, Jessica R. signed court-approved expectations. (Petitioner's Exhibit B). These expectations set forth the conditions which the mother would have to meet in order to have Isaiah returned to her custody.
The parties do not dispute that the mother complied with the expectations that she sign releases, visit Isaiah as often as permitted by DCF, refrain from substance abuse, and avoid involvement with the criminal justice system. The parties disagreed at hearing about the mother's compliance with the conditions that she cooperate with psychiatric treatment, complete a parenting course and attend school full time.
DCF referred mother for individual therapy at the Institute for the Hispanic Family. Jessica R. underwent a psychiatric evaluation there on October 4, 1998. (Petitioner's Exhibit A, Page 3). The respondent was diagnosed with an eating disorder and borderline personality disorder, and the evaluator recommended that the mother take a prescription medication (Depakote) and attend therapy for those conditions. (Petitioner's Exhibit A, Page 3). Jessica R., who had a prior history of psychiatric treatment indicated that she did not wish to take medication. She started therapy at the Institute for the Hispanic Family, but thereafter stopped attending. The mother claimed during her testimony that she did so because her assigned therapist made her feel uncomfortable.
Jessica R. introduced evidence at hearing that she subsequently secured therapy on her own at an agency known as Hartford Behavioral Health. She attended five therapy sessions at Hartford Behavioral Health. (Mother's Exhibit 1). The agency terminated the mother's therapy there after five sessions because it felt that the respondent did not need further treatment. (Testimony of Jessica R.). The respondent also submitted to a CT Page 9212 psychiatric evaluation at Hartford Behavioral Health. That evaluation, conducted by Beth Villodas, a nurse practitioner who specializes in the field of psychiatry, found ". . . no evidence of suicidality, homicidality or psychosis." (Mother's Exhibit 1). Ms. Villodas testified that based on her examination of the respondent, she did not believe that Jessica R. required psychiatric treatment. DCF challenged Ms. Villodas' findings, based on the earlier evaluation conducted at the Institute for the Hispanic Family, and also based upon the fact that Ms. Villodas had not reviewed the respondent's records related to prior psychiatric history and treatment. During her testimony at hearing, the nurse practitioner admitted that she was not aware of certain aspects of the respondent's psychiatric history, but also stated that the information which she learned during the hearing would not prompt her to change her diagnosis or recommendation. The court found Ms. Villodas' testimony to be credible.
DCF introduced no evidence at hearing that Jessica R. has engaged in inappropriate behavior, or demonstrated symptoms of mental illness, or impaired judgment, that would adversely affect her ability to parent, during the period of time since Isaiah was committed. This court observed the mother's physical appearance and demeanor during her testimony at the hearing. Ms. Villodas' opinion that the respondent did not need treatment at the present time was also shared by the therapist at Hartford Behavioral Health who saw Jessica R. in five treatment sessions before discontinuing therapy.
Although the respondent failed to follow through with the course of treatment initially recommended by DCF, the court finds that the respondent has adequately addressed the mental health issues identified in the court-approved expectations which were issued at the time of commitment.
The evidence established that Jessica R. failed to complete two parenting programs to which she was referred by DCF. (Petitioner's Exhibit A, Page 3). However, Jessica R. successfully completed a 12-week parenting course at the Institute for the Hispanic Family. (Mother's Exhibit 2). The report from that agency notes: "The client has been both an active listener and verbal participant; receptive to ideas and suggestions. She successfully completed the curriculum." (Mother's Exhibit 2). Based on the forgoing, the court finds that the respondent complied with the expectation that she cooperate CT Page 9213 with a parenting program.
Following commitment, Isaiah was initially placed in a DCF foster home, and thereafter went to live with his mother and his maternal great-grandmother in the great grandmother's home. (Petitioner's Exhibit A, Page 4). On May 19, 1999, DCF removed the child from that home and placed Isaiah with his paternal grandmother. DCF social worker Madeline Torres testified that Jessica R. had conflicts with the maternal great-grandmother, and asked DCF to place Isaiah with the paternal grandmother. Ms. Torres believes that the child has adjusted well in the paternal grandmother's care, and recommended that the child remain in this home if commitment is extended. The court found Ms. Torres' testimony to be credible.
The evidence at hearing proved that Jessica R. has been inconsistent with court expectations that she obtain her general equivalency degree and adequate income. The mother was employed at two part-time jobs during the past year and has not been working for the past week due to her claim that a co-worker harassed her. Jessica R. started two adult education programs during the past year, but failed to complete either. She has recently enrolled in a vocational training course offered by Goodwin College (formerly Data Institute) which offers certification as a nurse's assistant. (Mother's Exhibit 5).
Jessica R. is now more than five months pregnant. She testified at hearing that she plans to attend the Goodwin College course, pursue her GED degree, and work part-time. She is still living with Isaiah's great-grandmother. The respondent testified that if the child was returned to her, she would ask the great-grandmother to care for the child while she went to school and worked. She indicated that she would work after school, and then return home at 10 p.m., which she claimed is 19-month-old Isaiah's bedtime.
The court does not find this plan to be in Isaiah's best interest. Jessica R. has been inconsistent in both her employment and educational efforts during the past year. She has only recently begun the nurse's assistant program. She is dependent on her grandmother, with whom she recently had conflicts, for shelter and extensive daycare assistance, and is not able to care for Isaiah herself. The respondent is suggesting that her child be removed from the paternal grandmother's home (where Isaiah has done well over the past two months) in order that his care be CT Page 9214 primarily delegated to the maternal great-grandmother. In essence, the respondent is merely asking the court to substitute one surrogate caretaker for another.
DCF has proven by a preponderance of the evidence that Jessica R. is not yet able to assume custody of Isaiah and needs to complete additional rehabilitative efforts before she would be able to do so appropriately. Per Connecticut Practice Book Section 33-9, this court finds by a fair preponderance of the evidence that an extension of commitment is in the best interest of the child.[3] The court also finds by a preponderance of the evidence that the petitioner made reasonable efforts to reunify Isaiah with his parents during the past 12 months. This court would expect that Jessica R. complete the CNA program and/or obtain her GED degree, secure consistent employment and demonstrate that she has appropriate daycare and adequate housing before Isaiah is returned to her care. The court notes that the father has been engaging in rehabilitative efforts and is also considered a possible future placement resource for Isaiah. All parties and counsel are directed to confer and sign updated expectation forms which will be consistent with this decision and submitted to the court for approval as amended reunification orders in this case. Said proposed amended orders shall be filed with the court within 60 days of the date hereof. The court service officer is directed to facilitate the execution of these amended orders.
The motion to extend commitment is hereby GRANTED. The commitment of Isaiah R. to the custody of the Commissioner of the Department of Children and Families is hereby extended for a period not to exceed one year, effective July 7, 1999 through July 7, 2000.
SO ORDERED.
DYER, J.